Lampe v Neurological Surgery, P.C. (2019 NY Slip Op 04927)





Lampe v Neurological Surgery, P.C.


2019 NY Slip Op 04927


Decided on June 19, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 19, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOHN M. LEVENTHAL
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.


2017-00899
 (Index No. 15426/13)

[*1]Robert J. Lampe, etc., respondent, 
v
Neurological Surgery, P.C., et al., appellants.


Aaronson Rappaport Feinstein & Deutsch, LLP, New York, NY (Deirdre E. Tracey and Deborah A. Karlewicz of counsel), for appellants.
Davis & Ferber, LLP, Islandia, NY (Cary M. Greenberg of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice and lack of informed consent, the defendants appeal from an order of the Supreme Court, Nassau County (Jerome C. Murphy, J.), entered December 2, 2016. The order denied the defendants' motion for summary judgment dismissing the complaint.
ORDERED that the order is affirmed, with costs.
On August 22, 2012, the defendant Michael H. Brisman, a neurosurgeon, performed microvascular decompression surgery upon the plaintiff's decedent, James G. Lampe, to alleviate his trigeminal neuralgia. The decedent was discharged from the hospital two days later. In the days following his discharge, the decedent began to complain to his family members and his roommate of a headache. On August 29, 2012, the decedent's aunt called Brisman's office, the defendant Neurological Surgery, P.C., on the decedent's behalf about his continuing complaint of a headache. Brisman prescribed the decedent a steroid for the headache. The following morning, eight days after the surgery, the decedent's roommate found him dead on their kitchen floor. An autopsy concluded that the decedent's cause of death was "intracerebellar hemorrhage due to hypertensive cardiovascular disease."
The plaintiff commenced this action, inter alia, to recover damages for medical malpractice and lack of informed consent. Following discovery, the defendants moved for summary judgment dismissing the complaint. In the order appealed from, the Supreme Court denied the motion. The defendants appeal.
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stukas v Streiter, 83 AD3d 18, 23; see DiLorenzo v Zaso, 148 AD3d 1111, 1112; Feuer v Ng, 136 AD3d 704, 706). A defendant seeking summary judgment in a medical malpractice action must make a prima facie showing either that he or she did not depart from the accepted standard of care or that any departure was not a proximate cause of the plaintiff's injuries (see Hernandez v Nwaishienyi, 148 AD3d 684, [*2]686; Feuer v Ng, 136 AD3d at 706; Stukas v Streiter, 83 AD3d at 24). Where the defendant has satisfied that burden, a plaintiff must "submit evidentiary facts or materials to rebut the defendant's prima facie showing" (Stukas v Streiter, 83 AD3d at 30). "Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause" (Lyons v McCauley, 252 AD2d 516, 517; see Whitnum v Plastic & Reconstructive Surgery, P.C., 142 AD3d 495, 497; Novick v South Nassau Communities Hosp., 136 AD3d 999, 1000).
Here, the plaintiff alleges that Brisman performed unnecessary microvascular decompression surgery upon the decedent, performed the surgery in a negligent manner, and failed to recognize and treat the decedent's postoperative complaint of headaches, causing the decedent's death. The defendants established, prima facie, their entitlement to judgment as a matter of law through the postoperative CT-scan reports, which indicated that there was no evidence of postoperative bleeding; the autopsy report; and a detailed affidavit of a neurosurgeon who opined that Brisman did not depart from the applicable standard of care, Brisman's informed consent was in accordance with good and accepted practice, and the hemorrhage that caused the decedent's death was a sudden catastrophic event that was unrelated to the surgery performed by Brisman (see DiLorenzo v Zaso, 148 AD3d at 1113; Sukhraj v New York City Health & Hosps. Corp., 106 AD3d 809).
In opposition, however, the affidavit of the plaintiff's expert, a board-certified neurologist, raised a triable issue of fact. The plaintiff's expert opined that Brisman deviated from good and accepted medical practice in proceeding with the surgery in light of the variety of pharmaceutical options available to treat trigeminal neuralgia and the risk of hemorrhage and death associated with microvascular decompression surgery. He further challenged the medical examiner's conclusion that the decedent's hemorrhage was a consequence of hypertension. Rather, he opined, the bleeding was a consequence of Brisman's manipulation of the posterior fossa veins and vascular sinuses, which resulted in a venous thrombosis and cerebellar infarction that evolved over the course of days. The plaintiff's expert further opined that bleeding into the cerebellum, a long-recognized complication of this type of surgery, was caused by Brisman's negligence in the manner in which he performed the surgery. He stated that Brisman's postoperative care of the decedent also deviated from good and accepted medical practice because the decedent's complaint of headache warranted an immediate CT scan, MRI, or referral to the emergency room. The expert further opined that Brisman's deviations were the proximate cause of the decedent's death.
"Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (Feinberg v Feit, 23 AD3d 517, 519; see Simpson v Edghill, 169 AD3d 737, 738). Moreover, the plaintiff's submissions raised a triable issue of fact as to whether a reasonably prudent patient in the decedent's position would have undergone the surgery if he or she had been fully informed (see Walker v Saint Vincent Catholic Med. Ctrs., 114 AD3d 669, 671; Kozlowski v Oana, 102 AD3d 751, 753).
Accordingly, we agree with the Supreme Court's determination to deny the defendants' motion for summary judgment dismissing the complaint.
DILLON, J.P., LEVENTHAL, BRATHWAITE NELSON and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court